UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION

Plaintiff,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*

Defendants.

Civil Action No. 26-1704 (CKK)

**FIRST JOINT STATUS REPORT**

Pursuant to the Court's June 17, 2026, Minute Order, Plaintiff Foundation for Individual Rights and Expression ("FIRE") and Defendants Department of Homeland Security and Immigration and Customs Enforcement ("ICE"), through undersigned counsel, provide the Court with a Joint Status Report with respect to this action brought under the Freedom of Information Act ("FOIA").

In this action, Plaintiff Foundation for Individual Rights and Expression ("FIRE") seeks records responsive to three FOIA requests (2026-ICFO-14533, 2026-ICFO-15800, 2026-ICFO-16692, or Requests 1, 2 and 3). These requests are set forth in part in Appendix I to this Status Report. Broadly, Defendants interpret these requests to relate to a database that FIRE believes to exist based in part on a January 2026 interview with White House Border Czar Tom Homan a comment by an ICE agent in Maine later that month and subsequent press reporting regarding Defendants' collection of data, including through facial recognition software, relating to protestors ("the database"). *See* Amended Complaint, ECF No. 11, ¶¶ 1-4.

In an email on August 10, 2026, Plaintiff provided to Defendant an order of priority for the requests (noting that Plaintiff was not dropping any requests).

## DEFENDANT'S STATEMENT

### Status of Processing

As an initial matter, ICE notes that FIRE seeks records concerning an unnamed "database" based on statements by White House Border Czar Tom Homan, who is not an ICE employee, and a comment by a field-level ICE agent in Maine.

ICE reports that, as of August 20, 2026, it has completed preliminary inquiries in response to Plaintiff's three pending FOIA requests and, at this time, does not anticipate many, if any, responsive records related to "the database." Even so, ICE is in the process of tasking searches reasonably calculated to locate responsive records, if any exist, based on the information obtained during the preliminary inquiries. ICE anticipates potentially responsive records related to the subpart of Request 2026-ICFO-14533 ("the use of "Mobile Fortify" by ICE agents operating in the field (as opposed to at the border)"). Once searches are completed and potentially responsive records, if any, are collected, ICE will confer with Plaintiff regarding the volume of records collected and the timing of the agency's review and release of non-exempt responsive records.

ICE is unable to commit to honoring Plaintiff's requested priorities as doing so would not be the most efficient way to task the searches and obtain potentially responsive documents. However, ICE will reconsider the request once the searches are complete and the agency is able to evaluate whether the requested prioritization can be accommodated without sacrificing efficiency in processing and producing potentially responsive records that may be located.

## Response to Plaintiff's Section

Defendant and Defendant's Counsel dispute any suggestion in Plaintiff's Statement that they have not complied fully with this Court's June 17 Order to "promptly confer and file a joint status report, on or before August 21, 2026, advising the Court of the status of the processing of the Plaintiff's FOIA request and any other matters requiring the Court's attention," as shown by this filing. Defendant disputes Plaintiff's characterization that they "received no substantive response until mid-afternoon yesterday, August 20" when Defendant sent Plaintiff a draft of this Status Report – e.g., counsels for Plaintiff and Defendant exchanged several emails on the subject of this litigation on August 10, 2026.

Defendants also note that this filing is a Status Report for the purpose of "advising the Court of the status of the processing of the Plaintiff's FOIA request and any other matters requiring the Court's attention." It is not a motion.

"A request for a court order must be made by motion where the parties may request orders or other relief from the Court." Fed. R. Civ. P. 7(b)(1). To the extent Plaintiff's Section contains requests for orders from the Court or other relief, these should be denied as not having been made by motion; if Plaintiff seeks orders from the Court, Plaintiff should file motions, which Defendant will then have a fair opportunity to oppose.

## PLAINTIFF'S STATEMENT

1. This Court's Minute Order of June 17, 2026 ordered the parties to confer "promptly." Starting July 23, the day after the Answer was filed, counsel for Plaintiff invited counsel for the Defendants to engage in the process of conferring that the Court contemplated. Apart from statements on August 10, 2026, that Defendant's counsel was checking with his

client, Plaintiff received no substantive response until mid-afternoon yesterday, August 20, when it received part of the text Defendant drafted above and an invitation to redline the document, rather than to confer.

2. With respect to Request 1, part (a), Request 2 and Request 3, Defendants state that they have merely engaged in "preliminary inquiries," meaning that they have not yet engaged in any searches for responsive records. They offer no date by which final inquiries or subsequent searches will conclude despite the fact that, upon receipt, Defendants placed these requests on the "simple track." To prevent further delay in conducting inquiries and searches for these records of substantial national importance, FIRE suggests that the Court order the Defendants to conclude their searches and to disclose non-exempt records within thirty days. If that proves unusually burdensome (and it should not be as the Defendants have hinted that few if any records have been found), the Defendants should be permitted to ask the Court for additional time, including an explanation of why thirty days was insufficient and offering a specific deadline for responding to these requests.

3. With respect to Request 1, part (b), the Defendants appear to misread FIRE's requests by focusing solely on "the database." Part (b) sought records relating to *other* databases as well. Defendants say nothing at all about their inquiries or searches for records responsive to this particular request. FIRE suggests that the Court require them to do so within ten days.

4. With respect to Request 1, part (c), Defendants state only that they expect responsive records. Again, Defendants offer no indication as to when the search and review will begin or conclude. FIRE suggests that the Court set a thirty day deadline for doing so and for disclosing non-exempt records, with an opportunity for Defendants to move for additional time and a requirement that they set forth a detailed rationale for why such time is required.

5. Given the Defendants' lack of progress, and failure to provide specific information necessary to advise the Plaintiff and the Court of the efforts made to search for, process and disclose responsive non-exempt records, FIRE suggests that the Court require that Joint Status Reports be filed every thirty days until the Court is satisfied from those reports that the Defendants are making prompt progress on these matters.

## CONCLUSION

Defendant respectfully proposes that the parties file a further joint status report apprising the Court of progress in this action and proposing a schedule for briefing or disclosure on or before October 21, 2026.

* * *

Dated: August 21, 2026

Respectfully submitted,

/s/ Jeffrey S. Gutman
JEFFREY S. GUTMAN, PLLC
1712 Hobart St NW
Washington, DC 20009
(202) 631-5129
jsgutman@gmail.com

*Counsel for Plaintiff*

JEANINE FERRIS PIRRO
United States Attorney

By: /s/ Samuel G. Settle
SAMUEL G. SETTLE
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-7705
samuel.settle@usdoj.gov

*Attorneys for the United States of America*

## Appendix I: Description of the Underlying FOIA Requests

1. **2026-ICFO-14533 (Request 1)**
    a. Records generated on or after January 1, 2025, describing the existence, purpose, or policies pertaining (a) to any database referenced by Homan's comments or the ICE agent's comments; (b) any of the following databases: Bluekey, Grapevine, Hummingbird, Reaper, Sandcastle, Sienna, Slipstream, or Sparta; or (c) the use of "Mobile Fortify" by ICE agents operating in the field (as opposed to at the border) and
    b. Communications on or after January 1, 2025, to or from ICE leadership or the ICE Communications Team mentioning any database mentioned in the first subpart of the request or mentioning "facial recognition."
2. **2026-ICFO-15800 (Request 2)**
    a. A database, spreadsheet or list described by White House Border Czar Tom Homan in a January 15, 2026 interview with Laura Ingraham.
    b. All records extracted from the database distributed to any third party.
3. **2026-ICFO-16692 (Request 3)**
    a. All records concerning the development and implementation of the database.
    b. All training materials, guidance or instructions on the criteria used for entering information into the database and the categories of information to be included.
    c. All communications and contracts with vendors regarding the development, maintenance and hosting of the database.

d. Any records showing that [the agency] sought a legal opinion regarding the legality of the database and any resulting legal opinions received in response to the request.